IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-01697-RBJ

RAY MONTOYA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

## ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Ray Montoya's application for disability insurance benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citations omitted). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (citations omitted). Thus, although some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court might "have made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citations omitted).

Upon review, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 45 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Mr. Montoya applied for disability insurance benefits on or around May 11, 2011. He claimed inability to work since his alleged onset date of May 9, 2011 due to bilateral I5 spondylolysis without listhesis, bilateral L5 spondylolysis without listhesis (lower back), right knee degenerative arthritis, and depression. R. 189. Mr. Montoya's date last insured is December 31, 2015. The Commissioner denied Mr. Montoya's application on July 26, 2011. Mr. Montoya then requested a hearing before an administrative law judge (ALJ), and the ALJ conducted hearing on May 16, 2012. On June 19, 2012 ALJ Kathryn D. Burgchardt issued an opinion denying benefits. The Appeals Council denied Mr. Montoya's request for review on April 30, 2013. Thereafter, Mr. Montoya filed a timely appeal with this Court.

## BACKGROUND

### Medical Evidence

Mr. Montoya was let go from his job with Dish network as a satellite installer on May 9, 2011. That same day he presented to the Denver Veterans' Administration (VA) Hospital and underwent a series of medical examinations for back and knee pain. He was diagnosed with bilateral L5 spondylolysis without listhesis (essentially a stress fracture of a vertibra without misalignment) with respect to his back pain and with moderate to significant 3-compartment osteoarthritis with respect to his knee pain. R. 255–56. He was referred for an evaluation and twelve physical therapy sessions to take place between May 12 and August 12, 2011. R. 265. There are no medical records indicating that Mr. Montoya ever utilized this referral or went to physical therapy for purposes of relieving his back and knee pain. He did, however, go to a physical therapist in 2012 to seek a functional assessment evaluation for purposes of his disability claim, which will be discussed more fully below.

On May 9, 2011 Mr. Montoya also underwent a mental health screening during which he indicated that he was not suffering from acute emotional/behavioral difficulties nor did he have a history of either. R. 277. He also stated that he had not been feeling down, depressed, or hopeless in the previous two weeks. *Id.*

On May 27, 2011 Mr. Montoya filed a claim for individual unemployability with the VA. *See* R. 224. On or around November 28, 2011 the VA denied his claim, finding that Mr. Montoya was capable of gainful employment. R. 229. In particular, the VA found that although Mr. Montoya could no longer perform his job as a satellite dish installer due to his physical impairments, he was not precluded from all gainful employment. R. 230. The VA medical

examiner opined that he was able to perform sedentary work, and the mental health examiner did not conclude that all employment was precluded. *Id.*

On June 30, 2011 Mr. Montoya met with Ryan Otten, MD, for a consultative examination concerning his disability benefits application. *See* R. 283. At that time Mr. Montoya complained of back pain, arthritis in the knee, and depression. *Id.* Dr. Otten diagnosed Mr. Montoya with chronic low back pain with possible radiculopathy, reported history of lumbar spine degenerative disc disease; moderate to severe 3-compartment right knee osteoarthritis; depression; and WHO class III (morbid) obesity. R. 287. He also noted that Mr. Montoya was severely hypertensive that day, which the plaintiff attributed to "white coat syndrome." *Id.* Dr. Otten completed a functional assessment in which he opined that there were no limitations on the number of hours Mr. Montoya could stand or sit during an 8-hour workday; that he should be limited to walking 3–4 hours in an 8-hour workday; that he could occasionally (less than 4 hours out of an 8-hour workday) perform the activities of bending, squatting, crouching, stooping, and kneeling; that he could lift or carry 20 pounds frequently and 40 pounds occasionally; that he could occasionally push and pull with both upper extremities; and that he should have only rare (less than 2 hours out of an 8-hour workday) exposure to stairs and ladders. *Id.*

With respect to his depression, it appears that Mr. Montoya had stopped taking his medication because he felt it was not working and at times made him feel worse. *See* R. 227, 283. As of November 2011 Mr. Montoya was not in therapy, R. 227. In early 2012 he underwent some group and individual therapy sessions, though a very limited amount, *see* R. 295–304. A mental health examination that took place in or around November 2011 showed that Mr. Montoya's cognitive functioning was normal, his thought process was linear and goal-directed, he did not exhibit inappropriate behavior, and his thought process and communication

were not impaired. R. 227. However, his social functioning was impaired because he isolated himself. *Id.*

On May 8, 2012 Mr. Montoya presented to Excel Physical & Occupational Therapy, P.C. for a functional capacity assessment for purposes of his disability benefits claim. *See* R. 305. Barbara Kelly, PT, opined that Mr. Montoya was incapable of stooping, crouching, kneeling, climbing stairs, repetitive reach overhead with either hand, pulling, or low lift. *Id.* However, she found that Mr. Montoya was capable of pushing at the light level; high lift, mid lift, and carrying at the sedentary level; constant handling and fingering of the right hand; frequent handling and fingering of the left hand; and occasional walking, reaching immediately with the left and right hands, sitting, and standing. *Id.*

On May 14, 2012 Mr. Montoya met with consultative psychologist Brad Marten, Psy.D. *See* R. 327. Dr. Marten found that Mr. Montoya displayed adequate levels of sustained persistence and pace throughout the examination as well as fully intact levels of active concentration and more passive focus and attention. R. 333. Dr. Marten concluded that these findings suggest "intact ability to actively concentrate on instructions and tasks as well as carry out the same presented to [Mr. Montoya] auditory [*sic*] in workplace settings." R. 333. He also found that Mr. Montoya would likely "be able to adequately attend to simpler instructions and/or tasks as well as carry out the same in workplace settings." *Id.* The only limitation noted was a moderate to significant limitation concerning delayed auditory recall, which "will likely negatively impact [Mr. Montoya's] ability to consolidate and retrieve pertinent auditory verbal information in workplace settings to a moderate to marked degree." *Id.* With respect to social functioning, Mr. Montoya indicated "a stable level of psychosocial functioning without any significant improvement or deterioration within the past month relative to any time in the past

5

year." R. 334. Overall, Dr. Marten diagnosed Mr. Montoya with Posttraumatic Stress Disorder; Major Depressive Disorder: Recurrent, Mild; Alcohol Dependence, In Full Sustained Remission; and Cannabis Abuse, In Full Sustained Remission. R. 333, 334.

**Hearing Testimony**

Upon request, Mr. Montoya received a hearing with ALJ Burgchardt on May 16, 2012. During the hearing, Mr. Montoya testified that he had been unemployed since May 9, 2011 but that he had been receiving unemployment insurance (UI) benefits since the third quarter of 2011. R. 26. As the ALJ noted, to receive UI benefits an applicant must certify to the State that he is able and looking for work. *Id.* Mr. Montoya explained that he had only been looking for sedentary work that he could perform with his limitations, but that nobody would hire him. R. 26–27. Mr. Montoya further explained that when applying for benefits he did not believe he could work full-time but that he would have taken part-time work if it had been offered. R. 41.

Mr. Montoya further testified that he could not work even if he had a sit/stand option unless he had the ability to walk around for 15–20 minutes every hour or two. R. 44. He claimed that Dish gave him a position like this, but that he was still unable to perform his work duties.[1] R. 43–44. And he contends that this is ultimately why he was laid off. However, Mr. Montoya does not explain how he was actively looking for sedentary work while knowingly needing to leave his work station to walk for 15–20 minutes every hour or two.

With respect to his obesity, Mr. Montoya testified that he walks 30 minutes a day and that as a result he had lost 40 pounds in nine months. R. 32, 45–46. He explained that his doctors at the VA encouraged him to lose weight with the anticipated effect that it would help alleviate his

---

[1] Notably, nothing in the record indicates that Dish ever changed Mr. Montoya's essential job functions from satellite installer to a position where he could work indoors at a desk all day. In fact, the medical treatment records from May 9, 2011 (the day Mr. Montoya lost his employment) indicate that Mr. Montoya had been working for Dish for five years "but has been calling in sick the past four months because he cannot climb ladders and feels unsafe on the roof." R. 292.

knee and back problems. R. 45–46. In spite of his weight loss, he testified that his knee pain remains the same and that his back has gotten worse. R. 49.

Finally, Mr. Montoya discussed his depression, explaining that as his depression has gotten worse he has become angry more quickly. R. 47. He describes getting short with people, though not with his family members. *Id.* When asked about his medication, he explained that he feels more anxious when he takes it and agreed that it was not helping him with his mood. R. 36.

At the end of the hearing the ALJ heard testimony from a Vocational Expert (VE). The ALJ asked the VE a series of hypothetical questions regarding a person with Mr. Montoya's age (46 at that time), education, work experience, and residual functional capacity. The VE testified that such a person could perform Mr. Montoya's past relevant work as a postal worker (mail sorter). R. 52. The VE also explained that such a person could perform other jobs existing in significant numbers in the national economy such as small products assembler, cashier II, and collator/operator. R. 53–54. The VE affirmed that his testimony was consistent with occupational descriptions and characteristics as provided in the Dictionary of Occupational Titles and its companion publications as well as with his experience as a vocational expert. R. 54–55.

**Denial of the Claim**

To qualify for disability insurance benefits, an individual must (a) meet the insured status requirements of the Social Security Act (the "Act"); (b) not have attained retirement age; (c) file an application; and (d) be under a "disability" as defined in the Act. 42 U.S.C § 423(a)(1). Disability is defined as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The claimant carries the burden of establishing that he was

disabled prior to his date last insured. *See Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2008).

The Social Security Administration uses a five-part process to determine whether a claimant qualifies for disability insurance benefits. 20 CFR § 404.1520. At **step one** the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR § 404.1520(a)(4)(i). The ALJ found that Mr. Montoya had not engaged in substantial gainful activity since May 9, 2011, his alleged onset date. R. 12.

At **step two** the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 CFR § 404.1520(a)(4)(ii). The ALJ found that Mr. Montoya suffered from the following severe impairments: degenerative disc disease, osteoarthritis of the knee, and depression. R. 13. The ALJ found that the following impairments were non-severe: history of alcohol abuse, obesity, diabetes, and hyperglycemia. *Id.*

At **step three** the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). 20 CFR § 404.1520(a)(4)(iii). The ALJ determined that none of Mr. Montoya impairments—alone or in combination—met or medically equaled one of the listed impairments in the Listings. R. 13.

Before reaching step four, the ALJ is required to determine the claimant's residual functional capacity ("RFC"). *See* R. 16; 20 CFR § 404.1520(a)(4)(iv). An RFC represents "the most [a claimant] can still do despite his limitations." 20 CFR § 404.1545(a)(1). The RFC is "the claimant's maximum sustained work capability." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ found that Mr. Montoya has an RFC to perform light work as defined

in 20 CFR § 404.1567(b) with the following limitations: claimant would require unskilled work with a specific vocational preparation (SVP) of one or two; could lift and/or carry ten pounds frequently and twenty pounds occasionally; could stand and/or walk with normal breaks for a total of four hours in an eight hour workday; could sit with normal breaks for a total of six hours in an eight hour workday; would require a sit/stand option while remaining at the workstation, meaning he could sit/stand at will while performing assigned duties; could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions but pushing and pulling with the right lower extremity would be on an occasional basis; should avoid unprotected heights and moving machinery; and could occasionally climb, stoop, crouch, kneel, and crawl but should not climb ladders, ropes, or scaffolds. R. 15.

At **step four** the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past work. 20 CFR § 404.1520(a)(4)(iv). The ALJ found that Mr. Montoya could perform some past relevant work, specifically as a postal worker (mail sorter). R. 18. Even after making this determination, the ALJ proceeded to step five to make alternative findings. *See id.*

At **step five** the ALJ must determine whether the claimant is able to do any other work that exists in significant numbers in the national economy considering the claimant's RFC, age, education, and work experience. 20 CFR § 404.1520(a)(4)(v). The ALJ found that Mr. Montoya was limited to unskilled work. Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Mr. Montoya would be able to perform the requirements of representative occupations such as small products assembler, cashier II, and collator operator, all of which exist in significant numbers in the national economy. R. 19; *see also* R. 53–54.

**ANALYSIS**

Through counsel Mr. Montoya raises four issues on appeal.  He claims that: (1) the ALJ's findings regarding his mental state were inconsistent, unclear, and unsupported by substantial evidence; (2) the RFC is not based on substantial evidence and is instead contrary to the great weight of the evidence; (3) the ALJ's step four determination is not supported by substantial evidence; and (4) the ALJ erred in her step five determination by failing to elicit sufficient evidence establishing that Mr. Montoya could perform the essential functions of the representational occupations.

**A. Mental State.**

Mr. Montoya argues that the ALJ erred by making findings that were inconsistent, unclear, and unsupported by substantial evidence regarding his mental impairments.  In particular, Mr. Montoya contends that the ALJ was inconsistent by finding that his depression was a severe impairment while failing to assign any limitations based on his depression in the RFC.  Mr. Montoya alleges that his depression causes him to have significant difficulties interacting with people outside his family, to avoid social situations, and to become more easily angered, but that none of these limitations appear in the RFC.  He also insists that there is a discrepancy between the RFC and the ALJ finding that he had moderate limitations in his ability to maintain concentration, persistence, and pace.

"[O]nce a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment." *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991).  The Commissioner contends that the ALJ's finding that Mr. Montoya – who had a history of skilled work – could perform only unskilled work with a SVP of only one or two adequately accommodated the plaintiff's mental health limitations.  First, unskilled work

10

accounts for any mild limitations in Mr. Montoya's social functioning, as the primary work functions in the majority of unskilled work relate to working with things, rather than people. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g). Furthermore, limiting the plaintiff to an SVP of only 1 or 2, where his most recent work had an SVP of 6, took into account limitations in concentration. *See* POMS DI 25020.010 § B(3) (noting that the capacity to perform unskilled work includes ability to maintain attention for extended periods of two-hour segments, but concentration is not critical). Unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. Social Security Ruling (SSR) 96-9P, 1996 WL 374185, at *9 (July 2, 1996).[2] Mr. Montoya has not alleged, nor would the record support such an allegation, that his depression would have prevented him from engaging in unskilled work.

With respect to Mr. Montoya's limitations in the ability to maintain concentration, persistence, and pace, these findings were made at step 3 of the evaluation process in order to determine whether Mr. Montoya met or equaled a Listing. The ALJ found that for purposes of that analysis, Mr. Montoya suffered "*at most* mild limitations in activities of daily living and social functioning, moderate limitation[s] in maintenance of concentration, persistence and pace with no episodes of decompensation of extended duration." R. 14 (emphasis added). As such, she concluded that he did not meet the "paragraph B" criteria under Listing 12.04. Yet "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment

---

[2] Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). The rulings represent "precedent final opinions and orders and statements of policy and interpretations that [the Commissioner has] adopted." *Id.* They are to be relied upon as precedents in adjudicating cases. *See* Social Security Rulings: Preface, *available at* http://ssa.gov/OP_Home/rulings/rulings-pref.html.

11

but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). And "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . ." *Id.* The Tenth Circuit has likewise reasoned that an ALJ is under no obligation to include limitations from the B-criteria in the RFC assessment. *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). Mr. Montoya, on whom the burden of proof falls, failed to file a reply brief, and as such has offered no competing legal authority. Based on the arguments presented, the Court agrees with the Commissioner that this argument must fail.

### B. RFC Assessment.

Mr. Montoya contends that the RFC assessment was contrary to the great weight of the evidence and based on inadequate findings of fact. First, Mr. Montoya claims that the report of Dr. Otten, on which the ALJ partially relied, is flawed because his diagnoses and objective results were inconsistent with his functional capacity assessment. For example, in spite of diagnosing Mr. Montoya with moderate-to-severe 3-compartment right knee osteoarthritis, Dr. Otten opined that there was no limit to how many hours Mr. Montoya could stand in an 8-hour workday. Yet Mr. Montoya admits that the ALJ did not adopt this opinion into her RFC. Still, he contends that "this obvious logical inconsistency casts a pall over all of Dr. Otten's functional capacity determinations, including those relied upon by the ALJ." [ECF No. 13 at 14]. While Dr. Otten's RFC assessment in this respect may have been logically flawed, so too is this argument. If Mr. Montoya were correct, then an ALJ could only rely on medical opinions to which she gave controlling weight. Yet the ALJ is tasked with determining whether a medical opinion is consistent with the record as a whole when deciding what weight to give it. *See*

12

C.F.R. § 404.1527(c). And when partial or little weight is given to an opinion, that implicitly necessitates that parts of that opinion – for example inconsistent aspects of it – will be discounted or rejected outright. Mr. Montoya fails to put forward any argument that portions of Dr. Otten's opinion were inappropriately incorporated into the RFC. As such, his argument must fail.

Second, Mr. Montoya contends that although the ALJ explained what weight she gave to each medical opinion in the record, she did not explicitly state what medical evidence she relied on in assigning an RFC to Mr. Montoya. Instead, he claims she cited almost entirely non-medical evidence, such as Mr. Montoya's reported activities, while discounting medical evidence. The Court disagrees. ALJ Burgchardt explicitly stated which medical evidence she relied on, and to what extent and why, when developing the RFC. In reviewing her opinion, she devoted nearly three full pages to a discussion of the medical records (which are quite minimal in this case) and to how they were incorporated into the RFC. *See* R. 15–18. At times she also gave the plaintiff the benefit of the doubt by adding limitations to his RFC based on his subjective complaints and on medical opinions with which she did not fully agree.

Finally, Mr. Montoya fails to allege additional restrictions that should have been incorporated into his RFC. As such, the Court is at a loss for what to do; it is unclear what restrictions Mr. Montoya believes the ALJ should have included from the medical evidence on file. Instead, Mr. Montoya's argument seems to be based in a procedural concern that the ALJ failed to explicitly identify the medical providers and treatment records she relied on in assessing his RFC. *See* [ECF No. 13 at 14]. The Court has rejected that contention. Furthermore, based on an independent review of the record, the Court finds that the RFC assessment is supported by substantial evidence.

### C. <u>Step Five Analysis.</u>

Mr. Montoya argues that the ALJ erred when she made no specific, meaningful findings of fact regarding the discrepancies between the jobs in the national economy she determined Mr. Montoya could perform and these jobs' descriptions in the Dictionary of Occupational Titles (DOT), the Selected Characteristics of Occupations (SCO), and the description notes to the DOT.

As discussed above, at step five the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Mr. Montoya could perform. Those jobs included such representational categories as small products assembler, cashier II, and collator/operator. Mr. Montoya contends that there was a conflict between the DOT descriptions and the testimony of the VE during the hearing which the ALJ had an affirmative responsibility to investigate, but which she failed to do.

First, Mr. Montoya argues that the descriptions of the representational occupations conflict with the ALJ's finding that he had moderate limitations in concentration, persistence, and pace. This contention is merely a rehashing of the earlier arguments concerning the RFC. Because the Court has concluded that the RFC was based on substantial evidence in the record, any argument relying on its inaccuracies is moot.

Next, the plaintiff argues that it is error for one of the occupations to require the ability to listen and understand information and ideas presented through spoken words and sentences "despite the great weight of the evidence that the claimant had difficulty processing auditory information." [ECF No. 13 at 17–18]. First, there is only one opinion on the record concerning Mr. Montoya's auditory skills, the opinion of Dr. Marten. And Mr. Montoya's characterization of Dr. Marten's opinion is inaccurate. Though Dr. Marten opined that Mr. Montoya may suffer from "moderate to marked impairment re: delayed auditory memory recall," R. 324, he also

14

concluded that Mr. Montoya had an "intact ability to actively concentrate on instructions and tasks as well as carry out the same presented to him auditory [*sic*] in workplace settings," R. 333. Furthermore, the ALJ sufficiently discussed and discounted the earlier portion of Dr. Marten's opinion in her RFC assessment. R. 17. And the Court rejects this form of collateral attack on the RFC.

Finally, Mr. Montoya complains that the ALJ failed to inquire of the VE or make specific findings regarding the sit/stand option included in his RFC, which would allow Mr. Montoya to sit or stand at will while remaining at his work station. This assertion is inaccurate. The ALJ explicitly asked the VE whether an individual with the same age, education, and past work experiences as Mr. Montoya with the RFC she assigned him (including the sit/stand option) could perform work existing in significant numbers in the national economy. R. 53–54. The VE answered that all of the representational occupations listed above would remain viable work options. R. 54. Mr. Montoya also alleges that because the DOT itself does not discuss sit/stand options, the ALJ was required to elicit evidence regarding the sit/stand option on the availability of employment and to make findings about it. Yet that is precisely what the ALJ did when she asked the VE, a vocational expert, to testify as to the effects of the sit/stand option. Mr. Montoya presents no authority that this type of inquiry does not satisfy the requirement to elicit evidence. The Commissioner, on the other hand, cites to *Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014), in support of her position that an ALJ may rely on the testimony of a VE where "the VE testified that the jobs he identified were consistent with a hypothetical person with [the claimant's] impairments and the DOT." The Court agrees.

**D. Past Relevant Work.**

Mr. Montoya argues that the ALJ failed to engage in the appropriate analysis at step four when determining that he could return to his past relevant work as a postal worker. The step four finding that Mr. Montoya could perform past relevant work was an alternative finding that Mr. Montoya was not disabled and that he could perform work in the national economy. This argument is moot in light of the Court's finding that the step five analysis was without error.

## ORDER

The decision of the Commissioner is AFFIRMED.

DATED this 29th day of December, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge